UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:25-cv-01873-SSS-BFM | Date | July 28, 2025 |
|---|---|---|---|
| Title | *Lazaro Maldonado Bautista et al v. Ernesto Santacruz Jr et al.* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Petitioner(s): | Attorney(s) Present for Respondent(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING PETITIONERS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [DKT. 5]**

Petitioners Lazaro Maldonado Bautista, Ananias Pasqual, Ana Franco Galdamez, and Luiz Alberto de Aquino de Aquino apply ex parte for a temporary restraining order. [Dkt. 5]. Respondents Ernesto Santacruz Jr., Todd Lyons, Krista Noem, Pamela Bondi, and Feriti Semaia ("Respondents") have filed their Opposition to this application. [Dkt. 8, "Opp."]. For the following reasons, Petitioners' Motion is **GRANTED**.

I.   FACTUAL BACKGROUND

According to the Petition for Writ of Habeas Corpus by Individuals in Federal Custody, Petitioners are foreign nationals currently being held at the Adelanto Detention Center in Adelanto, California. [Dkt. 1]. All but one of the Petitioners were arrested by Homeland Security Investigations ("HSI") and/or Immigration and Customs Enforcement ("ICE") agents on June 6, 2025, in downtown Los Angeles, California. [*Id.* at 5–6]. Franco Galdamez was arrested by Border Control agents around June 19, 2025, in Los Angeles during an ICE

operation. [*Id.* at 6]. On the day of their arrests, Petitioners were each charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), or as being present without admission in the United States. [Dkt. 1 ¶¶ 43, 48, 53, 58]. Petitioners are in the midst of ongoing § 1229(a) immigration proceedings in Adelanto, California. [Dkt. 5-2 at 3–5]. It does not appear any order of removal has been issued for Respondents. Petitioners have been in immigration detention since their arrests in June of 2025. [*See generally* Dkt. 1].

On July 8, 2025, the Department of Homeland Security (DHS) instituted a notice titled "Interim Guidance Regarding Detention Authority for Applicants for Admission." [Dkt. 5-2 at 45–46, "DHS Guidance Notice"]. The Notice communicated DHS's choice, in coordination with the Department of Justice ("DOJ") to "revisit[] its legal position on detention and release authorities," determining that Section 235 of the Immigration and Nationality Act ("INA") would serve as the applicable immigration detention authority rather than Section 236 for all "applicants for admission." [*Id.*]. In other words, the change in policy requires ICE employees to consider anyone arrested in the United States and charged with being inadmissible as an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A). Under § 1225(b)(2)(A), "applicants for admission" are subject to mandatory detention for proceedings under 8 U.S.C. § 1229(a) and not entitled to the due process protections found within § 1226(a).

Each of the Petitioners requested bond hearings, all of which were denied by an Immigration Judge ("IJ") between July 15, 2025, and July 22, 2025. [*Id.* ¶ 5; Dkt. 5-2, Exs. E, F, G, H, "Bond Orders"]. In each of the Bond Orders, the IJ cites to Section 235(b) of the INA (*i.e.*, 8 U.S.C. § 1225) as grounds for lack of jurisdiction. [*Id.*]. The Bond Orders are consistent with DHS's notice regarding its change in policy.

On July 23, 2025, Petitioners filed a Petition for Writ of Habeas Corpus raising several challenges against the DHS change in policy, including violations of 8 U.S.C. § 1226(a), the Fifth Amendment Right to Due Process, and the Administrative Procedure Act ("APA"). [Dkt. 1 at 20–21]. That same day, Petitioners filed this Application for a Temporary Restraining Order. [*See* Dkt. 5-1, Application for Temporary Restraining Order or "App."]. In this Application, Petitioners specifically request that this Court enjoin Respondents from detaining Petitioners unless they are provided with individualized bond hearings before an IJ. [App. at 3]. Petitioners additionally seek an order to prohibit Respondents from

relocating Petitioners outside this District pending final resolution of this litigation. [*Id.*].

Respondents filed their opposition on July 25, 2025, to which Petitioners have filed a response. [*See generally* Opp.; Dkt. 11, "Reply"].

## II. LEGAL STANDARD

To justify ex parte relief, the moving party must make two showings: (1) "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).[1]

For the Court to grant an application for a TRO, the moving party must show: (1) that he is "likely to succeed on the merits" of his underlying claim, (2) that he is "likely to suffer irreparable harm in the absence of preliminary relief," (3) that "the balance of equities tips in his favor," and (4) that the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

The Ninth Circuit uses a sliding scale approach to preliminary injunctions, such that "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). Under the sliding scale approach, a petitioner is entitled to a TRO if he has raised "serious

---

[1] Ordinarily, the "circumstances justifying the issuance of an ex parte [temporary restraining] order are extremely limited." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). To be entitled to an ex parte temporary restraining order, Plaintiffs must set out "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. Pro. 65(b)(1)(A). However, because Petitioners have provided Respondents with notice of this ex parte filing, and Respondents have filed an Opposition, the Court will proceed.

questions going to the merits ... and the balance of hardships tips sharply in [his] favor." *All. for the Wild Rockies*, 632 F.3d at 1131 (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)).

## III.    DISCUSSION

Respondents' Opposition argues first that this Court lacks jurisdiction over this matter. [Opp. at 6–11]. In the alternative, Respondents argue Petitioners fail to meet the requirements for a TRO. [*Id.* at 11–19]. Petitioners' Reply contests Respondents' arguments regarding jurisdiction. [*See* Reply].

### A.    Jurisdiction

Because Article III "generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case," this Court first considers Respondents' challenge to this Court's jurisdiction under 8 U.S.C. § 1252. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

In its Opposition, Respondents contend that § 1252(b)(9) and § 1252(g) preclude review of Petitioners' claims. [Opp. at 14]. The Court examines each subsection in turn.

#### 1.    Section 1252(b)(9)

Respondents cite to § 1252(b)(9) as channeling "[j]udicial review of all questions of law . . . including interpretation and application of constitutional and statutory provisions, arising from any action taken . . . to remove an alien from the United States" to the appropriate federal court of appeals. [Opp. at 16, (citing Section 1252(b)(9))]. Though it is true that § 1252(b)(9) allocates judicial review to courts of appeals, this subsection has a much narrower reach than the Opposition suggests.

Respondents' argument cites Supreme Court precedent that refers to § 1252(b)(9) as the "unmistakable 'zipper' clause" that "'channels judicial review of all [claims arising from deportation proceedings].'" [Opp. at 16, (citing *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999)).] Though it may appear self-evident, it is important to note that § 1252(b)(9) exists under § 1252(b). Section 1252(b) lists "[r]equirements for review of orders of removal." § 1252(b). As Petitioners' Reply correctly states, § 1252(b)(9) channels review of "*final orders of removal*" to federal courts of appeals. [Reply at 5 (emphasis added)].

To the Court's knowledge, nothing in the record indicates that any orders of removal have been issued for any of the Petitioners. Rather, Petitioners have been denied bond hearings by an IJ. Without an order of removal, § 1252(b)(9) alone does not bar this Court from reviewing Petitioners' TRO regarding the legality of the new DHS policy and Bond Orders applying § 1225 rather than § 1226(a).

### 2. Section 1252(g)

Respondents also identify § 1252(g) as a bar to review by this Court. [Opp. at 14–15]. Section 1252(g), unless other laws provide jurisdiction, strips all courts of jurisdiction to hear "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." § 1252(g).

Petitioners assert that their claims challenge whether they are subject to mandatory detention during the pendency of removal proceedings, not any decision to commence proceedings, adjudicate cases, or execute removal orders. [Reply at 2–5]. Respondents believe that such claim "stem[s] from their detention," which "arises from the decision to commence such proceedings against them." [Opp. at 15]. If Respondents' argument is true, then this Court would lack jurisdiction over this TRO.

The Supreme Court previously characterized § 1252(g) as a narrow provision, applying "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). In doing so, the Supreme Court found it "implausible that the mention of *three discrete events* along the road to deportation was a shorthand way to referring to *all claims arising from* deportation proceedings." *Id.* (emphasis added).

Following the Supreme Court's guidance in *Reno*, this Court does not find that claims regarding whether Petitioners are subject to mandatory detention during the pendency of their removal proceedings fall under § 1252(g)'s prohibition on judicial review.

### 3. Section 1252(a)

Although the parties either fail to raise arguments about or address only in a cursory manner the nature of § 1252(a), the Court examines whether this

subsection would divest jurisdiction over this matter. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) (outlining all courts' "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party").

Section 1252, titled "Judicial Review of Orders of Removal," contains a provision detailing "[m]atters not subject to judicial review." *See* 8 U.S.C. § 1252, § 1252(a)(2). Section 1252(a)(2) contains four subsections, which outlines categories of claims that are not subject to judicial review. § 1252(a)(2)(A)–(D). None of these subsections precluding judicial review apply to this matter, as the specified statutory provisions do not cite to § 1225(b)(2)(A) or § 1226(a), which are the two provisions the Parties agree Petitioner's claims challenge. Thus, no part of § 1252 deprives this Court of jurisdiction.

Having established this Court's jurisdiction to review Petitioners' TRO, the Court now evaluates whether the TRO is appropriate.

### B.  Merits of the TRO

Petitioners request that the Court grant the TRO because they are currently being deprived of their statutory and constitutional rights, and continued detention constitutes irreparable injury. [App. at 3, 15–16]. Petitioners suggest the denial of a bond hearing, which prolongs their detention in violation of federal laws, is attributable to the new DHS policy. [App. at 8]. As the TRO requests either release from custody or individualized bond hearings, Petitioners insist granting the TRO is necessary to prevent continued detention without due process. [*Id.* at 3, 18].

Respondents argue that this Court should deny the TRO for two primary reasons: (1) Petitioners do not meet the necessary elements for a TRO, and (2) Petitioners did not exhaust administrative remedies before the BIA. [Opp. at 6–20]. The Court will evaluate whether Petitioners have demonstrated the elements required to seek a TRO, and then will address the question of exhaustion of remedies.

### 1.  Serious Question Raised

Here, Petitioners' TRO raises serious questions about the legality of their prolonged detention without a bond hearing.[2]  [App. at 6–13].  Individuals detained under § 1226(a) are entitled to receive bond hearings at the outset of detention. 8 C.F.R. §§ 236.1(d)(1); *see also Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018). As articulated by the Ninth Circuit, "§ 1226(a) stands out from the other immigration detention provisions in key respects." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) (observing that § 1226(a) and its implementing regulations "provide extensive procedural protections that are unavailable under other detention provision").  Not only does § 1226(a) provide several layers of review of the agency's initial custody determination, but it also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id*.

Respondents have recently revisited their position on detention and release authorities, choosing unilaterally to treat individuals arrested and detained under Section 236 of the INA as "applicants for admission" under Section 235.  [Dkt. 5-2, 45–46].  While Respondents engage in extensive statutory interpretation in their Opposition to argue Petitioners are subject to Section 235, the Opposition entirely ignores the source of the legal issue underlying Petitioners' TRO: the DHS Guidance Notice.

Respondents argue § 1225 governs Petitioners' detention, rather than § 1226(a), because § 1225 contains specific language, namely "applicants for admission." [Opp. at 19].  Under Respondents' logic, there exists an irreconcilable conflict between § 1225 and § 1226 that necessitates the former's procedural

---

[2] If the Court were to consider whether Petitioners have demonstrated a likelihood of success on the merits rather than whether the TRO has raised a serious question, it still finds that Petitioners have met this element.  This Court finds a reasonable likelihood that Petitioners are governed under § 1226(a), rather than § 1225.  *Diaz Martinez v. HYDE, et al.*, No. CV 25-11613-BEM, 2025 WL 2084238 at *2–3 (D. Mass. July 24, 2025) (distinguishing § 1226, "a separate (non-mandatory) detention scheme applicable when an individual is 'already in the country'" from § 1225, which subjects "applicants for admission" to mandatory detention).

authority to govern over the latter's more "general authority." [*Id.*]. But the Court finds no reason to collapse two separate sections of the INA's statutory scheme.

The Court accepts that detention under § 1225 applies to "applicants for admission," which fall into two categories as articulated in *Jennings*. *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). But Petitioners are not "applicants for admission." Section 1225 subjects "[a]ny alien subject to the procedure under [§ 1225]" to mandatory detention. § 1225(b)(1)(B)(iii)(IV). In contrast, as discussed above, § 1226(a) confers procedural protections to individuals apprehended and detained under that section of the INA. The juxtaposition of the procedural protections between these subsections suggests Congress intended that they apply to a different set of individuals.

Viewing the nature of detention as a crucial difference between these statutory sections, the Court does not find any irreconcilable conflict between § 1225 and § 1226. Detention under § 1226 is permissive; detention under § 1225 is mandatory. The Ninth Circuit previously concluded "permissive and mandatory descriptions are in harmony, as they apply to different situations." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1081 (9th Cir. 2015).

The separate nature of these two subsections is further evidenced by the lack of the phrase "applicant for admission" in the entirety of § 1226. Therefore, the Court finds Respondents' argument that Petitioners are "applicants for admission" unconvincing.

As Respondents fail to articulate any valid justification, legal or otherwise, for the application of § 1225 to Petitioners as "applicants for admission", the Court holds that Petitioners' TRO raises a serious question as to whether DHS has permissibly "revisited its legal position on detention and release authorities" to withhold protections that Petitioners would have otherwise been afforded under § 1226(a). [Dkt. 5-2 at 45–46, "DHS Guidance Notice"].

### 2.     Likelihood of Irreparable Harm

Respondents argue "detention alone is not an irreparable injury" and that Petitioners "have an adequate remedy in appealing to the BIA." [Opp. at 18, 25].[3]

---

[3] The Court addresses issues of the adequacy of remedy in Part C in connection with exhaustion of remedies. For purposes of irreparable harm discussed *infra*, the Court finds Respondents' argument unavailing.

In doing so, Respondents assert Petitioners' alleged harm "is essentially inherent in detention, the Court cannot weigh this strongly in favor of" Petitioners. [*See id.* (citing *Lopez Reyes v. Bonnar*, No. 18-CV-07429-SK, 2018 WL 7474861 (N.D. Cal. Dec. 24, 2018)]. This citation is easily distinguishable. In *Lopez Reyes*, Petitioner alleged irreparable harm "in the form of psychological distress and the risk that he might not be able to see his sibling again." *Id.* at *10. Here, the harm inherent to Petitioners' continued detention is deprivation of their right to a bond hearing as well as an opportunity to be represented by counsel. The nature of the harm in this case is significantly different in kind as well as in magnitude.

In the present matter, the Court finds that the potential for Petitioners' continued detention without an initial bond hearing would cause immediate and irreparable injury, as this violates statutory rights afforded under § 1226(a). *See Rodriguez Diaz*, 53 F.4th at 1202.

### 3. Balance of Hardships and Public Interest

The balance of the hardships tips strongly in Petitioners' favor as they would suffer great hardship if this Court were to deny the TRO. *See All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (requiring the balance of hardships to "tip sharply" in the moving party's favor).

Respondents believe the BIA is better postured than this Court to resolve disputes like this and "provide clear and uniform guidance." [Opp. at 27]. Respondents argue that the Government has a compelling interest in "the steady enforcement of its immigration laws," and that granting the TRO would "only disrupt the status quo" and "inject[] a degree of uncertainty" in the immigration process. [*Id.*]. Because the parties' dispute the legality of the application of a new policy under the DHS Guidance Notice, the Court has doubts on whether granting the TRO would disrupt the status quo, especially when the change in policy stands to jeopardize Petitioners' rights.

Petitioners contend the TRO would serve the public interest as their claims assert that the new policy in the DHS Guidance Notice violates federal laws. [App. at 16]. Permitting continued violations of federal law would serve "neither equity nor the public interest." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022). Thus the public interest weighs in favor of Petitioners because continued detention without the legal protections afforded under § 1226(a) potentially arbitrarily violates Petitioners' due process rights. [*See generally* App.; Dkt. 1]. *See Xuyue Zhang v. Barr*, 612 F.Supp.3d 1005, 1017 (C.D. Cal.) ("Generally, public interest concerns are implicated when a constitutional right has been

violated, because all citizens have a stake in upholding the Constitution."). As such, the Court finds that both factors weigh heavily in favor of Petitioners.

The Court now considers the parties' arguments regarding exhaustion.

### C. Exhaustion of Remedies

"[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. United States,* 395 U.S. 185, 193 (1969). If an individual has not exhausted available administrative remedies, district courts generally should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies. *See Morrison–Knudsen Co. v. CHG Int'l, Inc.,* 811 F.2d 1209, 1223 (9th Cir. 1987).

Despite the doctrine of administrative exhaustion, courts have found circumstances to excuse exhaustion of remedies. *See Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004) ("If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement."). No provision of the immigration laws appears to clearly require exhaustion of administrative remedies such that failure to exhaust would pose a jurisdictional bar to review. *Miranda v. Garland*, 34 F.4th 338, 352 (4th Cir. 2022). The Court, therefore, examines whether it should excuse Petitioners' failure to exhaust administrative remedies, or require exhaustion as a prudential matter. *See Laing*, 370 F.3d at 998.

### 1. Limits to Discretion

Despite having the discretion to waive prudential limits, such discretion "is not unfettered." *Id.* A court may require prudential exhaustion if: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff,* 488 F.3d 812, 815 (9th Cir. 2007).

Respondents argue each of these considerations are at play. [Opp. at 24]. The Opposition argues that Petitioners must exhaust their remedies, outlining the need for agency expertise, concerns regarding bypassing the administrative scheme, and the prospect of the administrative process to self-correct. [*Id.*]. The Court is skeptical of each of these considerations.

*First*, the role of agency expertise is unclear. The parties seem to agree that the crux of this dispute is whether § 1225 or §1226 governs Petitioners' detention.

Such question is a matter of statutory interpretation, one to which the parties dedicate a considerable portion of their pleadings.  [App. at 6–15; Opp. at 19–23].  In their argument supporting the application of § 1225 over § 1226, Respondents argue that "longstanding agency practice carries little, if any, weight under *Loper Bright*."  [Opp. at 22].  But later Respondents suggest this Court would "likely benefit from the BIA's expertise" in immigration bond decisions.  [Opp. at 24].  Not only is the agency expertise of dubious value in interpreting these specific statutes, but such statutory interpretation is also unlikely to require agency consideration to generate a proper record to reach a proper decision.

*Second*, Respondents argue that excusing exhaustion here would only encourage other detainees to bypass administrative remedies.  [Opp. at 24].  The Court agrees with Respondents that waiving exhaustion may increase the burden on district courts, and that more similarly situated individuals may attempt to directly appeal their no-bond determinations.  [*Id.*].  However, the Court finds Respondents' cited authority distinguishable from Petitioners' circumstances.  In *Aden v. Nielsen*, the Petitioner sought district court review of an IJ's "no bond" determination, asserting the IJ applied the incorrect evidentiary standard.  *Aden v. Nielsen*, No. C18-1441RSL, 2019 WL 5802013 at *1 (W.D. Wash. Nov. 7, 2019).  Parties in *Aden* did not dispute the evidentiary standard that should have applied—the clear and convincing evidence standard.  Rather, Petitioner believed the IJ impermissibly relaxed the evidentiary burden at his bond hearing.  *Id.*  Here, the parties dispute the applicable law to Petitioners' detention.  Though there may be similarly situated individuals who desire to raise similar appeals in the district courts, a resolution of this question of law at the district court level might provide expedient clarity and guidance to the IJs and BIA, obviating the need for similar, subsequent bypassing of administrative remedies.

*Third*, Respondents urges this Court to "allow the administrative process to correct itself" in the case that the IJs erred as alleged.  [Opp. at 24].  The Court is unconvinced that the administrative process would self-correct in light of the DHS Guidance Notice.  That Notice specifically states DHS and ICE's intent to "ensure immediate and consistent application of the Department's legal interpretation while additional operational guidance is developed."  [DHS Guidance Notice at 45].  Considering the DHS's unequivocal commitment to the contested legal authority in this matter, the Court find Respondents' invocation of this consideration compelling.

The Court accordingly finds no grounds for requiring prudential exhaustion to limit its discretion in considering waiving exhaustion of remedies.

### 2.     Waiver of Exhaustion

Courts may waive prudential exhaustion if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing,* 370 F.3d at 1000.  Petitioners bear the burden of demonstrating at least one of these factors applies. *See Ortega-Rangel v. Sessions,* 313 F.Supp.3d 993, 1003 (9th Cir. 2018).

Petitioners argue that appeals to the BIA would be futile, further detention constitutes irreparable injury, and agency delay in adjudicating bond appeals warrants excusing exhaustion.  [App. at 17–20].  Respondents contend Petitioners failed to carry their burden, signaling back to the exhaustion issue and characterizing BIA review as adequate. [Opp. at 25–26].

The Court finds Petitioners' futility argument persuasive, which positions itself as the inverse of Respondents' argument about the agency's ability to self-correct.  The language of the DHS Guidance Notice, the IJs' practice of denying bond hearings based on that Notice, and the cited BIA decision in Petitioners' Application sufficiently demonstrate DHS and DOJ's commitment to the positions detailed in the Notice, which would render appellate review at the BIA inadequate or futile.

Having found exhaustion of remedies is not required and for the other reasons discussed above, the Court hereby **GRANTS** Petitioners' TRO.  [Dkt. 5-1].

Additionally, the Court finds that Petitioners will be irreparably prejudiced if Respondents choose to relocate Petitioners outside of this judicial district pending final resolution of this litigation.  In conjunction with the TRO, the Application is also **GRANTED**.[4]  [Dkt. 5-1].  The Court may revisit this at the hearing on the preliminary injunction.

## IV.   CONCLUSION

The Court finds the TRO raises serious questions concerning the merits of the case, the balance of the hardships tips sharply in Petitioners' favor, they are likely to suffer irreparable harm in the form of continued detention without an initial bond hearing, and granting their requested relief is in the public interest.  Accordingly, the Court finds that the TRO is necessary to prevent the immediate and irreparable injury that may occur.  As such, the TRO is **GRANTED**.  [Dkt. 5].

---

[4] The Court reminds Petitioner of the importance of articulating the ex parte standard in any future application at the risk of denial.  *See* C.D. Cal. R. 7-19.

In accordance with the above, pursuant to Federal Rule of Civil Procedure 65, it is **ORDERED THAT**:

- Respondents are enjoined from continuing to detain Petitioners unless they are provided an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within 7 days of the date of this Order;
- Respondents are enjoined from transferring, relocating, or removing Petitioners from the Central District of California without further order of the Court and pending final resolution of this litigation.

This Order shall be in effect until August 22, 2025. The Court **ORDERS** Respondents **TO SHOW CAUSE** as to why a preliminary injunction should not issue. Respondents shall file any response by **Friday August 8, 2025**, and Petitioners shall file any reply by noon on **Wednesday August 13, 2025**. The Court **SETS** a hearing in person on whether a preliminary injunction should issue on **August 22, 2025, at 1:00 p.m.**, in Courtroom 2, on the 2nd Floor of the George E. Brown, Jr. Federal Building and United States Courthouse at 3470 Twelfth Street, Riverside, California 92501.[5] All parties are required to attend the hearing in person and U.S. Immigration and Customs Enforcement is **DIRECTED** to transport Petitioners to the courtroom and ensure their presence at the hearing.

    **IT IS SO ORDERED**.

---

[5] Parties would ordinarily be entitled to a hearing on August 8, 2025, on the expiration of the TRO. However, the Court is unavailable, and for good cause, the Court sets the hearing to the earliest available date on August 22, 2025.