UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:25-cv-01873-SSS-BFM | Date | November 20, 2025 |
|---|---|---|---|
| Title | *Lazaro Maldonado Bautista et al v. Ernesto Santacruz Jr et al.* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|
| Irene Vazquez | Not Reported |
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Petitioner(s):      Attorney(s) Present for Respondent(s):
None Present                                             None Present

**Proceedings:   (IN CHAMBERS) ORDER GRANTING PETITIONERS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING REQUEST TO ENTER FINAL JUDGMENT [DKT. NO. 42]**

Before the Court is Petitioners Lazaro Maldonado Bautista, Ananias Pasqual, Ana Franco Galdamez, and Luiz Alberto de Aquino de Aquino's (collectively, "Petitioners") Motion for Partial Summary Judgment as to their First Amended Complaint seeking class relief. [Dkt. No. 42, "Motion"; Dkt. No. 15, "First Amended Complaint" or "FAC"]. Respondents Ernesto Santacruz Jr., Todd Lyons, Krista Noem, Pamela Bondi, and Feriti Semaia ("Respondents") have filed their Opposition to this Motion. [Dkt. No. 60, Opposition or "Opp."]. Petitioners filed their Reply on September 19, 2025. [Dkt. No. 62, "Reply"]. For the following reasons, Petitioners' Motion is **GRANTED**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

On June 6, 2025, a series of coordinated immigration raids began across Southern California, resulting in the arrest and detainment of around 2,000

individuals per day that week.[1]  This case centers around individuals directly affected by those events.

**The Petitioners.**  Among the arrested were Petitioners, each of whom are foreign nationals arrested pursuant to warrants issued by Homeland Security Investigations ("HSI") and/or Immigration and Customs Enforcement ("ICE") agents on June 6, 2025, in downtown Los Angeles, California.  [Dkt. No. 1 at 5–6; Dkt. No. 5-2 at 4, 8, 12, 17].[2]  On the day of their arrests, Petitioners were each charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), or as being present without admission in the United States.  [Dkt. No. 1 ¶¶ 43, 48, 53, 58].

Each of the Petitioners requested bond hearings, all of which were denied by an Immigration Judge ("IJ") between July 15, 2025, and July 22, 2025.  [*Id.* ¶ 5; Dkt. No. 5-2, Exs. E, F, G, H, "Bond Orders"].  In each of the Bond Orders, the IJ cited to Section 235(b) of the INA (*i.e.*, 8 U.S.C. § 1225) as grounds for lack of jurisdiction.  [*Id.*].  The Bond Orders were based in a recent change in policy by the Department of Homeland Security ("DHS").

**The Policy Change.**  On July 8, 2025, the Department of Homeland Security (DHS) instituted a notice titled "Interim Guidance Regarding Detention Authority for Applicants for Admission."  [Dkt. No. 5-2 at 45–46, "DHS Guidance Notice" or "DHS Policy"].  The Notice communicated DHS's choice, in coordination with the Department of Justice ("DOJ") to "revisit[] its legal position on detention and release authorities," determining that Section 235 of the Immigration and Nationality Act ("INA") would serve as the applicable immigration detention authority rather than Section 236 for all "applicants for admission." [*Id.*].  In other words, the change in policy requires ICE employees to consider anyone arrested in the United States and charged with being inadmissible as an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A).  Under § 1225(b)(2)(A), "applicants for admission" are subject to mandatory detention for proceedings under 8 U.S.C. § 1229(a) and not entitled to the due process protections found within § 1226(a).

---

[1] *See* Department of Homeland Security, *DHS Releases Statement on Violent Rioters Assaulting ICE Officers in Los Angeles, CA and Calls on Democrat Politicians to Tone Down Dangerous Rhetoric About ICE*, (June 7, 2025) [https://perma.cc/RJE5-PACW].

[2] Petitioner Franco Galdamez was arrested by Border Control agents around June 19, 2025, in Los Angeles during an ICE operation.  [Dkt. No. 1 at 6].

***Petitioners Seek Relief.***  Because of the new DHS Policy, Petitioners were denied bond hearings and remained in detention at the Adelanto Detention Center in Adelanto, California.

On July 23, 2025, Petitioners filed a Petition for Writ of Habeas Corpus raising several challenges against the DHS change in policy, including violations of 8 U.S.C. § 1226(a), the Fifth Amendment Right to Due Process, and the Administrative Procedure Act ("APA").  [Dkt. 1 at 20–21].  That same day, Petitioners filed an Application for a Temporary Restraining Order.  [*See* Dkt. 5-1, Application for Temporary Restraining Order or "App."].  Petitioners requested that the Court enjoin Respondents from detaining Petitioners unless they are provided with individualized bond hearings before an IJ.  [App. at 3].  Petitioners additionally sought an order to prohibit Respondents from relocating Petitioners outside this District pending final resolution of this litigation.  [*Id.*].  This Court granted the application on July 28, 2025.  [Dkt. No. 1; Dkt. No. 14, "TRO Order"].

***Events Following the TRO.***  In granting the TRO, the Court ordered Respondents to provide Petitioners with an individualized bond hearing or release Petitioners from detention.  [*Id.* at 13].  On the same day the Court granted Petitioners' *ex parte* application for a TRO, Petitioners amended their complaint to include class allegations and requests for declaratory relief as to the legality of Respondents' policies relating to denying bond hearings.  [*See generally* FAC].

Respondents then filed a response to the Court's order to show cause on August 8, 2025.  [Dkt. 40].  This response provided evidence that each of the Petitioners was provided with an individualized bond hearing and subsequently released on bond.  [*See id.*].

***Current Posture.***  On August 11, 2025, Petitioners filed this Motion, seeking to declare the new DHS Policy as unlawful.  Respondents filed their opposition on September 12, 2025, to which Petitioners have filed a response.  [*See generally* Opp.; Dkt. No. 62, "Reply"].

Given the number of threshold issues in this matter, the Court first addresses concerns raised by Respondents regarding justiciability.  The Court then considers the issues of statutory interpretation underlying the parties' disputes pertaining to the legality of the DHS Policy and its bearing on Petitioners.

## II. JUSTICIABILITY

Article III "requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). Once again, Respondents argue that provisions of the Immigration and Nationality Act ("INA") bar this Court from reviewing this matter. [Opp. at 18–20; *see also* Dkt. No. 8 at 6–11].

Moreover, ensuring subject-matter jurisdiction is an "independent obligation" on all courts, even in the absence of a challenge from any party. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006). Thus, the Court considers *sua sponte* any questions of the applicability of mootness.

### A.  Statutory Restrictions on Judicial Review

Respondents' Opposition argues that the INA "entrusts the Executive branch to remove inadmissible and deportable [noncitizens]³ and to ensure that [noncitizens] who are removable are in fact removed from the United States." [Opp. at 17]. The Court has no doubts that the INA confers the executive branch with the powers to faithfully execute the statute's aim. Indeed, Congress expressly precluded judicial review of certain matters within the INA. *See e.g.,* 8 U.S.C. §

---

[3] This Order uses the term "noncitizenship" in place of "alienage" and "noncitizen" in place of "alien." The Court follows the U.S. Supreme Court and Ninth Circuit, where the use of the term "noncitizen" has become a common practice. *See Patel v. Garland*, 596 U.S. 328 (2022) (Barrett, J.); *United States v. Palomar-Santiago*, 593 U.S. 321 (2021) (Sotomayor, J.); *Barton v. Barr*, 590 U.S. 222, 226 n.2, (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" (citing 8 U.S.C. § 1101(a)(3))); *Avilez v. Garland*, 69 F.4th 525 (9th Cir. 2023); *Arce v. United States*, 899 F.3d 796 (9th Cir. 2018). Additionally, this Court thinks it is prudent to "avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing." *Chicago Manual of Style Online* 5.253, https://www.chicagomanualofstyle.org/book/ed17/part2/ch05/psec253.html. As noted by the Ninth Circuit, "[t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed[.]'" *Avilez*, 69 F.4th at 527 n.1 (citing *Alien*, *Webster's Third New International Dictionary* 53 (2002)). Accordingly, because the word "noncitizen" is synonymous and does not encompass such negative connotations, the Court finds "noncitizen" is a better word choice. *See Alien* and *Noncitizen*, *American Heritage Dictionary of English Language* 44, 1198 (5th ed. 2011).

1252(a)(2), § 1252(b)(9), § 1252(e)(3)(A).  However, the issues presented in this case fall outside the areas in which the INA has stripped courts of jurisdiction.

The Court examines each subsection raised by Respondents in turn.

### 1.  Section 1252(a) and Section 1252(b)(9)

Respondents argue that when reading § 1252(a) and § 1252(b)(9) together, the INA divests district courts of jurisdiction to review both direct and indirect challenges to removal orders.  [Opp. at 19].[4]  This is incorrect as to each of the sections of the INA read individually as well as read together.

As discussed in the TRO Order, Section 1252, titled "Judicial Review of Orders of Removal," contains a provision detailing "[m]atters not subject to judicial review."  *See* 8 U.S.C. § 1252, § 1252(a)(2).  Section 1252(a)(2) contains four subsections, which outlines categories of claims that are not subject to judicial review.  § 1252(a)(2)(A)–(D).  None of these subsections precluding judicial review apply to this matter, as the specified statutory provisions do not cite to § 1225(b)(2)(A) or § 1226(a), which are the two statutory provisions that the Parties agree are at the heart of this matter.  Thus, it remains that no part of § 1252 deprives this Court of jurisdiction.

Similarly, Respondents' jurisdictional challenge based in § 1252(b)(9) presents no new circumstances from the previous challenge raised in its opposition to Petitioners' TRO.  [Opp. at 18–19].  As of the date of this Order, nothing in the record indicates that any orders of removal have been issued for any of the Petitioners.  Consistent with this Court's TRO Order, § 1252(b)(9) channels review of "*final orders of removal*" to federal courts of appeals.  [Reply at 5 (emphasis added); *see also* TRO Order at 4–5].  Without an order of removal, § 1252(b)(9)

---

[4] In doing so, Respondents cite to *J.E.F.M. v. Lynch* for the proposition that "[t]aken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the PFR process."  [Opp. at 18 (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)].  However, this fails to acknowledge the next sentence of that very opinion cites to another Ninth Circuit opinion that clarifies that "jurisdiction over removal proceedings is limited to review of final orders of removal."  J.E.F.M., 837 F.3d 1031 (citing *Viloria v. Lynch*, 808 F.3d 764, 767 (9th Cir. 2015)).

alone does not bar this Court from reviewing Petitioners' Motion for Partial Summary Judgment regarding the legality of the new DHS Policy.

Therefore, these two sections of the INA do not independently nor jointly preclude judicial review.

### 2. Section 1252(e)(3)(A)

Finally, Respondents suggest § 1252(e)(3)(A) operates as a bar to review by this Court. [Opp. at 19–20]. Section 1252(e)(3)(A) provides that "[j]udicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia" and limits challenges to the constitutionality of a section or regulation, or whether certain regulations, policies, or procedures are inconsistent with the INA or violates other laws. *See* § 1252(e)(3)(A).

According to Respondents, because Petitioners "challenge an alleged policy of detaining applicants for admission under § 1225(b)," any challenges must be brought within the District Court for the District of Columbia. [Opp. at 20]. Petitioners correctly argue that this argument misunderstands Petitioners' claims, as they maintain they are detained under § 1226 and are therefore entitled to receive bond hearings rather than remain in mandatory detention. [Reply at 6].

Because the premise of Petitioners' claim is that the proper governing authority over their detention is § 1226 rather than § 1225, the Court does not find § 1252(e)(3)(A) to strip this Court of jurisdiction.

### B. Mootness

Moreover, ensuring subject-matter jurisdiction is an "independent obligation" on all courts, even in the absence of a challenge from any party. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006). Thus, the Court considers *sua sponte* any questions of the applicability of mootness to Petitioners' Motion.

The doctrine of mootness applies "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). A case that becomes moot no longer presents a case or controversy, and thus cannot be properly before a federal court.

Respondents previously suggested Petitioners' Motion, as well as the entire case, is moot because Petitioners lost their stake in this litigation when they received bond hearings. [Dkt. No. 69 at 3–4]. Specifically, Respondents suggest

Petitioners' reliance on *Nielson v. Preap*, 586 U.S. 392, is improper. [*Id.* at 5–6]. According to Respondents, because Justices Thomas and Gorsuch declined to join in the jurisdictional portion of the majority opinion, this renders *Preap*'s mootness discussion as a non-binding discussion by a plurality. [*Id.* at 5].

But *Preap* presents little relevance here. In *Preap*, the parties disputed mootness where the district court had certified a class that comprised of individuals in the district subject to mandatory detention under 8 U.S.C. § 1226(c). *Preap*, 586 at 400. Because the named plaintiffs had received relief, the Government argued in *Preap* that the class action was mooted. *Id.* at 403–04.

Here, the Court has not yet considered Petitioners' class certification motion. Thus, *Preap*'s discussion of mootness presenting jurisdictional barriers there does not provide clear guidance here. Rather, the portion of *Preap* that resonates here is that some of the plaintiffs in *Preap* "faced the threat of re-arrest and mandatory detention." *Preap*, 586 U.S. at 403.

Before this Court are exclusively the legal issues presented by the named Petitioners regarding the legality of the new DHS Policy. The focus of the mootness inquiry is on whether Petitioners present a live controversy—not the Petitioners' relationship to the putative class.

Petitioners in this case have not received complete relief due to the real risk of re-arrest and mandatory detention. [Dkt. No. 63 at 9]. Petitioners cite to four instances since their Motion in which Respondents have again arrested and re-detained similarly situated individuals and subjected them to mandatory detention. [*Id.*]. Moreover, it has now become binding precedent in immigration courts that the DHS Policy is lawful. *See Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (BIA 2025),

This Court finds Petitioners still maintain a live controversy, by virtue of the exceptions to the mootness doctrine, namely, concerns regarding voluntary cessation. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

Respondents suggest Petitioners cannot establish any exception to mootness because any threat of re-detention is "completely speculative and premised on the assumption that [Respondents] will violate this Court's order." [Dkt. No. 69 at 7]. The underlying basis for Respondents' argument is self-defeating. As Respondents will have it, the threat of Petitioners' re-detention is "speculative," even though

Petitioners cite to cases indicating the exact circumstances from which they seek relief, because those cases are "distinct" in that those individuals "should have been subject to mandatory detention under § 1225(b)(2)." [*Id.* at 6–7]. But Respondents argue in their Opposition for that exact proposition: that "Petitioners are subject to detention under § 1225(b)(2) because they are applicants for admission." [Opp. at 20]. At Respondents' perhaps involuntary admission, these facts present a prototypical example of voluntary cessation.

As the Supreme Court stated, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already*, 568 U.S. at 91. This doctrine supports the premise that "a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001). By seeking to view this case as moot ignores the reality that Respondents have acted upon and maintain their position that Petitioners are applicants for admission, and thus should be subject to mandatory detention under § 1225(b)(2). This case is very much still live, as Respondents have not demonstrated there is no reasonable expectation that Petitioners will not be re-arrested and re-detained.

*   *   *

Having established no jurisdictional barriers exist to adjudicating this Motion, the Court now considers Petitioners' Motion for Partial Summary Judgment.

### III. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(a). A fact is material if the dispute over that fact may affect the outcome of the lawsuit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court need not consider irrelevant and unnecessary factual disputes. *Id.* A dispute is genuine if a reasonable jury could return a verdict for the non-moving party based on the evidence. *Id.* The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To do so, the moving party must present evidence that either negates an essential element of the non-movant's case or demonstrates the non-movant does not have evidence sufficient to support its case. *Id.* If the movant has met its burden, the non-movant must set forth specific facts showing there is a genuine

issue for a trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In deciding a summary judgment motion, a court must believe the non-movant's evidence and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

## IV.   DISCUSSION

Petitioners' Motion for Partial Summary Judgment seeks to declare the new DHS Policy unlawful, and asks the Court to enter final judgment pursuant to Rule 54(b). [*See generally* Motion].[5] Respondents' Opposition argues, beyond the jurisdictional issues already discussed, Petitioners are not entitled to summary judgment where Congress has directed Petitioners and those similarly situated to be subject to mandatory detention. [Opp. at 20–30].

Because the parties appear to agree that there are no genuine disputes as to any material facts[6], the Court focuses on whether Petitioners are entitled to judgment as a matter of law. As reflected in the briefings, this is a question of statutory interpretation.

Before examining the statutory text at issue, the Court first provides a primer regarding the statutes, relevant developments to the statutes, and how they operate. Such background provides necessary context to evaluating the text of the statutory provisions. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.").

### A.   The INA and IIRIRA

The Immigration and Nationality Act of 1952 ("INA"), codified in Chapter 12 of Title 8 of the United States Code, governs all aspects of immigration law. *See* 8 U.S.C. §§ 1101 *et seq*. Forming the basis of current immigration laws of the United States, the INA addresses issues of admission qualifications for noncitizens,

---

[5] The Motion further argues that prudential exhaustion is not required in this scenario. [*See* Motion at 36–41]. Respondents do not raise any objection to this argument, and the Court finds that prudential exhaustion may be waived for the same reasons discussed in its TRO Order. [*See* TRO Order].

[6] *See* Dkt. No. 60-1 (reflecting that Respondents only raises disputes to immaterial facts or "to the extent Plaintiffs make any mischaracterization of the law").

naturalization and loss of nationality, refugee assistance, and removal procedures for noncitizen terrorists. *Id.* *See also* Margaret C. Jasper, *The Immigration and Nationality Act of 1952*, LEGAL ALMANAC: THE LAW OF IMMIGRATION (2012).

As reflected in the subchapters of the INA, immigration law involves the interplay between the manifold issues arising from any noncitizen's arrival, stay, departure, or removal from the United States. *See e.g.*, § 1181(c) (cross-referencing the admission of refugees with the admission of immigrants); § 1201(b) (differentiating registration requirements for noncitizens based on classes enumerated in § 1101); § 1229(a) (cross-referencing grounds of inadmissibility as affecting removal proceedings); § 1301 (conditioning the issuance of visas in accordance with § 1201).

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which "substantially amended" portions of the INA's judicial review scheme with a "new (and significantly more restrictive) one." *Nken v. Holder*, 556 U.S. 418, 424 (2009). Along with its changes to the availability of judicial review, IRRIRA added § 1225 to the INA, which outlines expedited removal of a certain class of noncitizens. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020). *See also Biden v. Texas*, 597 U.S. 785, 804 (2022). In contrast, the predecessor to the current language of § 1226 existed in the original INA. *See* INA of 1952, Pub. L. No. 414 (66 Stat. 200) (current version at 8 U.S.C. § 1226). Recently, Congress amended portions of § 1226 through the passage of the Laken Riley Act. Pub. L. No. 119-1, January 29, 2025, 139 Stat. 3 (2025).

### B. Evaluating Inadmissible Noncitizens

8 U.S.C. § 1225 and § 1226 govern how the executive branch evaluates inadmissible noncitizens. Logically speaking, inspection or apprehension of the noncitizen is a necessary precondition of removal. Only after a noncitizen is identified as inadmissible can removal proceedings happen.

Indeed, the Supreme Court has already differentiated these two sections, distinguishing their application by the category of noncitizens to which their provisions apply. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). *Jennings* held the Government may "detain certain [noncitizens] seeking admission into the country" under § 1225(b) while § 1226 "authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings." *Id.* (emphasis added).

In particular, the statutory language of § 1225 details the process by which immigration officers inspect noncitizens arriving in the United States, refer them for hearings, and initiate procedures for expedited removal. *See* § 1225(a) (defining the categories of individuals that immigration officers are to inspect and statements these individuals may provide at inspection); § 1225(b) (detailing the process for conducting inspections, including screening, interviews, and referrals); § 1225(c) (providing grounds for expedited removal involving security concerns); § 1225(d) (outlining immigration officers' authority relating to inspection). On the other hand, § 1226 describes how noncitizens may be apprehended and detained. *See* § 1226(a) (supplying an exhaustive list of scenarios noncitizens may face pending a removal decision, including being released on bond); § 1226(b) (describing the Attorney General's authority to revoke bond or parole); § 1226(c) (detailing the category of noncitizens that the Attorney General must take into custody); § 1226(d) (directing the Attorney General to create a system to identify criminal noncitizens); § 1226(e) (limiting judicial review of the Attorney General's discretionary decisions).

Beyond *how* noncitizens are identified as inadmissible, another distinction between these two sections is that noncitizens detained under § 1226(a) are entitled to receive bond hearings at the outset of detention. 8 C.F.R. §§ 236.1(d)(1). *See also Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018). As articulated by the Ninth Circuit, "§ 1226(a) stands out from the other immigration detention provisions in key respects." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) (observing that § 1226(a) and its implementing regulations "provide extensive procedural protections that are unavailable under other detention provision"). Not only does § 1226(a) provide several layers of review of the agency's initial custody determination, but it also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.*

Based on the undisputed facts, Petitioners were not inspected by immigration officers when arriving in the United States, and were already in the United States at the time of their arrest and being charged as inadmissible. [Dkt. No. 60-1 ¶¶ 18, 25, 26, 34, 42, 48].

Maintaining the position underlying their TRO, Petitioners argue that § 1226(a)—not § 1225(b)(2)—applies to them and those similarly situated.

[Motion at 23–36]. Respondents again argue that § 1225(b)(2) is the governing authority for "applicants for admission", which includes Petitioners. [Opp. at 20–29]. In simpler terms, the parties dispute whether Petitioners are "applicants for admission," a category dispositive of whether Petitioners are subject to mandatory detention pending their removal proceedings. If Petitioners are "applicants for admission," § 1225 governs, and they would not be entitled to bond hearings under § 1226(a).

But who is an "applicant for admission," and is that phrase relevant as to Petitioners?

### C. Plain Language of the INA

Both parties assert that the plain language of the INA supports their interpretation. [Motion at 23, 29–30; Opp. at 20–21; Reply at 13]. Petitioners state the application of § 1226(a) "does not turn on whether someone has been previously admitted," and affords access to bond to noncitizens that are inadmissible. [Motion at 23]. Moreover, Petitioners argue that the text of § 1225 "reflects a limited temporal scope." [*Id.* at 29]. Because § 1225(b)(2)(A) requires an "active construction" of the phrase "seeking admission" for "applicants for admission," it cannot apply to Petitioners. [*Id.* at 30].

In response, Respondents argue Petitioners are "applicants for admission" because § 1225(b)(2) is a "catchall provision" that applies to all applicants for admission not covered by § 1225(b)(1). [Opp. at 21, (citing *Jennings*, 583 U.S. at 287)]. According to Respondents, "applicants for admission" "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." [Opp. at 21 (citing *Jennings*, 583 U.S. at 297)]. Such an argument relies on the assumption that "applicants for admission" encompasses *all* noncitizens coming into and already in the United States. If this assumption is true, then Respondents are correct. But this cannot be correct.

Respondents' argument is at odds with the plain language of the INA. Neither party contends with the definition section of the INA, which readily resolves this dispute over statutory interpretation.

### 1. The INA's Definition Section

The preeminent canon of statutory interpretation requires courts to "presume that [the] legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253–54 (1992).

Thus, even where the parties have advanced various arguments to support their competing interpretations, the Court must "begin[] with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). Barring unusual cases, "[s]tatutory definitions control the meaning of statutory words." *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949).[7]

Found in § 1101 is the INA's definition section. *See* § 1101(a)–(h). Relevant here, the INA defines "[noncitizen]" as "any person not a citizen or national of the United States"; "application for admission" as "the application for admission into the United States and not to the application for the issuance of an immigrant or nonimmigrant visa"; and "admission" and "admitted" as "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer. *See* §§ 1101(a)(3), (a)(4), (a)(13)(A).[8]

Later in the INA, § 1225(a)(1) provides that "[a noncitizen] present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." § 1225(a)(1). "Applicants for admission"—when replacing "admitted" with its definition from § 1101(a)(13)(A)—are noncitizens who have not "lawful[ly] entered] into the United States *after inspection and authorization by an immigration officer*.'" *See* § 1101(a)(13)(A) (emphasis added); § 1225(a)(1).

In suggesting § 1225(b)(2) nevertheless encompasses Petitioners as "applicants for admission," Respondents ignore a crucial portion of *Jennings*. [Opp. at 21]. It is true that § 1225(b)(2) applies to "other [noncitizens]" who "is an applicant for admission, if the examining immigration officer determines that [a

---

[7] The Court's holding would not create "obvious incongruities in the [statutory] language" or erase from the statute an entire subsection. *See Lawson*, 336 U.S. at 201. In fact, the Court's interpretation of the INA effectuates the provisions of *both* § 1225 and § 1226, where Respondents' position would render the latter superfluous.

[8] *Torres v. Barr* has already clarified that "applicant for admission" and "application for admission" are not interchangeable. *Torres v. Barr*, 976 F.3d 918, 926–27 (9th Cir. 2020). The Ninth Circuit concurred with the BIA, which had held that "the term 'applicant for admission' in the deeming provision of § 1225(a)(1) 'merely' determines [a noncitizen's] legal status for purposes of removal proceedings." *Id.* at 929.

noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2). But *Jennings* considered § 1226 as existing in harmony with § 1225(b)(2), where § 1226(a) "authorizes the Government to detain certain [noncitizens] already in the country pending the outcome of removal proceedings." 583 U.S. at 289.

Individuals who have not been inspected and authorized by an immigration officer lack the trait to be categorized as "applicants for admission." The statutory language of § 1225(b)(2) contemplates a determination by an "examining immigration officer" regarding a noncitizen's admissibility. *See* § 1225(b)(2). Nowhere in the record supports the existence of an examining immigration officer or a requisite determination of inadmissibility that would result in mandatory detention, as Respondents insist. When considering the statutory definitions of the INA and the plain text of § 1225, it is unambiguous that "applicants for admission" do not include noncitizens already in the United States like Petitioners—individuals that were not determined inadmissible by an "examining immigration officer."

This is further supported by the heading under which § 1225(a)(1) falls. This subsection falls under § 1225, which addresses "[i]nspection by immigration officers; expedited removal of inadmissible arriving [noncitizens]; referral for hearing." § 1225.

What category, then, do Petitioners fall under? Individuals who are present in the United States and have not been inspected and authorized by an immigration officers are merely part of the broadly defined term "[noncitizen]": any person not a citizen or national of the United States. § 1101(a)(4). As the plain language of § 1226(a) supports Petitioners' interpretation, and "no insuperable textual barrier" hinders this reading, the Court finds that § 1226(a) is the appropriate governing authority over Petitioners' detention. *See Utility Air Regulatory Group v. E.P.A.*, 573 U.S. 302, 321 (2014).

### 2. The INA's Statutory Scheme

Where neither § 1225 nor § 1226 are ambiguous, only Petitioners' interpretation of these statutes "produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372 (1988). "[R]easonable statutory interpretation must account for both 'the specific context in which . . . language is used" and the 'broader context of the statute as a whole.'" *Utility Air Regulatory Group*, 573

U.S. at 321 (citing *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997)). The Ninth Circuit previously recognized that INA is a "dense statute" that is to be read "against the backdrop of our constitutional principles, administrative law, and international treaty obligations." *Torres v. Barr*, 976 F.3d 918, 923 (9th Cir. 2020) (citations omitted).

Petitioners argue that § 1225 and § 1226 are distinct regimes meant to address separate categories of noncitizens. The latter provides the "default detention authority" for all persons detained pending a removal decision, while the former has a limited temporal scope that concerns "inspection" and "expedited removal of inadmissible arriving [noncitizens]". [Motion at 24–29]. *See also Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499 at *17 (W.D. Wash. Sept. 30, 2025) (concluding that a "plain reading of [section 1226] implies that default discretionary bond procedures in section 1226(a) apply to noncitizens who . . . are 'present in the United States without being admitted or paroled' under section 1182(a)(6)(A) but *have not been* implicated in any crimes as set forth in section 1226(c)."). *See id.* (evaluating the language of § 1226 as "lend[ing] strong textual support that 'inadmissible' noncitizens . . . are included within section 1226").

Meanwhile, Respondents endorse an interpretation of § 1225 that effectively removes § 1226 from existence. Respondents attempt to downplay the consequences of their proposed position, stating that § 1226 is a mere redundancy in statutory drafting, or that it is "'congressional effort to be doubly sure' that such unlawful [noncitizens] are detained." [Opp. at 28]. Not so. If the Court were to accept Respondents' position that all noncitizens already in the country (regardless of whether they were inspected and authorized by an immigration officer) were "applicants for admission," then there would be no possible set of noncitizens to which § 1226(a) would apply. Put in another way, Respondents' proposed interpretation requires that any and all inadmissible noncitizens are also "applicants for admission." Such a premise cannot be harmonized with other portions of the INA. *See United States v. Castleman*, 572 U.S. 157, 178, (2014) (Scalia, J., concurring in part and concurring in the judgment) (explaining that the "presumption against ineffectiveness" means "that Congress presumably does not enact useless laws"). *See also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174–79 (2012) (regarding the rule against surplusage).

There must be an appreciable or meaningful distinction between § 1225 and § 1226.[9] The text of these subsections reveals a crucial difference in their treatment of detention. Detention under § 1226 is permissive; detention under § 1225 is mandatory. The Ninth Circuit previously concluded "permissive and mandatory descriptions are in harmony, as they apply to different situations." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1081 (9th Cir. 2015).

Thus, Respondents' expansive interpretation of "applicants for admission" would effectively nullify a portion of the INA through the DHS's legislative or interpretive exercise of power. Neither is appropriate under the separation of powers. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 386 (2024) (establishing that "[t]he views of the Executive Branch could inform the judgment of the Judiciary, but [do] not supersede it."). Meanwhile, Petitioners' interpretation—that § 1226(a) is the governing authority and that they are not "applicants for admission—is not contrary to the statutory scheme of the INA. *See generally* § 1226. Nowhere in § 1226 is the phrase "applicants for admission," "admission," or "admitted" used in the context raised in § 1225.

Absent Congressional action that repeals and revises § 1226(a), the directive that the Attorney General must either continue to detain the noncitizen or release the noncitizen on bond or parole persists. Respondents unacceptably collapse § 1226 into nonexistence under a wide-reaching interpretation of "applicants for admission." [*See* Reply at 8 (arguing Respondents' view would render § 1226(a) meaningless in despite a recent legislative amendment)].

Where statutory language is unambiguous and "the statutory scheme is coherent and consistent," the Court must end its inquiry. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240 (1989). Because the Court finds the

---

[9] The Court acknowledges certain other district courts disagree with this Court's interpretation. *Barrios Sandoval v. Acuna, et al.*, No. 6:25-CV-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025) (holding that the "plain text" of § 1225(a)(1) includes "any [noncitizen] physically present in the United States who has not been admitted"). *Cirrus Rojas v. Olson, et al.*, No. 25-CV-1437-BHL, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025) (same); *Vargas Lopez v. Trump*, No. 8:25CV526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025) (same). *See also Chavez v. Noem*, No. 3:25-CV-02325-CAB-SBC, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025) (denying a preliminary injunction on those grounds).

statutory provisions to be unambiguous and consistent with only Petitioners' interpretation, there is no need to engage with canons of construction, legislative history and intent, implementing regulations, or agency practice. [*See* Motion at 32–42; Opp. at 25–29].[10]

Accordingly, the Court **GRANTS** Petitioners' Motion for Partial Summary Judgment.

## V. PETITIONER'S REQUEST FOR FINAL JUDGMENT

Petitioners also request the Court to enter final judgment pursuant to Rule 54(b). [Motion at 40–41]. Although the Opposition does not provide argument as to this request, the Court **DENIES** this request.

Rule 54(b) provides that "[w]hen an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. Proc. 54(b). Because Petitioners have filed a pending motion for class certification, the Court finds final judgment would be inappropriate. [*See* Dkt. No. 41].

## VI. CONCLUSION

Consistent with the discussion above, Petitioners' Motion for Partial Summary Judgment is **GRANTED**. [Dkt. No. 42]. The Court further **DENIES** Petitioners' Request to enter final judgment.

**IT IS SO ORDERED**.

---

[10] Even if the Court were to consider the parties' alternative arguments, Petitioners' interpretation still presents more meritorious arguments. *See Rodriguez v. Bostock*, 2025 WL 2782499 at *21–26 (considering arguments regarding canons of construction, legislative history, and agency practice and concluding the same).