UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:25-cv-01873-SSS-BFM | Date | November 25, 2025 |
|---|---|---|---|
| Title | *Lazaro Maldonado Bautista et al v. Ernesto Santacruz Jr et al* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING PLAINTIFF PETITIONERS' MOTION FOR CLASS CERTIFICATION [DKT. NO. 41]**

Before the Court is Plaintiff Petitioners Lazaro Maldonado Bautista, Ananias Pasqual, Ana Franco Galdamez, and Luiz Alberto de Aquino de Aquino's (collectively, "Petitioners") Motion for Class Certification. [Dkt. No. 41, "Motion"; Dkt. No. 15]. Defendant Respondents Ernesto Santacruz Jr., Todd Lyons, Krista Noem, Pamela Bondi, and Feriti Semaia ("Respondents") have filed their Opposition to this Motion. [Dkt. No. 59, Opposition or "Opp."]. Petitioners filed their Reply on September 19, 2025. [Dkt. No. 61, "Reply"]. For the following reasons, Petitioners' Motion is **GRANTED**.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

The Court will not repeat the facts of this case for the sake of brevity. For reference to the factual background, please refer to the Prior Order on the Motion for Partial Summary Judgment, the First Amended Complaint ("FAC"), and the pleadings papers related to this motion. [*See* Dkt. No. 15, "First Amended Complaint" or "FAC"; Dkt. No. 81, "MSJ Order". *See generally* Dkt. Nos. 41, 59, 61].

On August 11, 2025, Petitioners filed this Motion, seeking declaratory relief and vacatur against Respondents' policies for two proposed classes:

- **Bond Eligible Class**: All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

- **Adelanto Class**: All noncitizens in the United States without lawful status who (1) have or will have proceedings before the Adelanto Immigration Court; (2) have entered or will enter the United States without inspection; (3) were not or will not be apprehended upon arrival; and (4) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing.

[*See* Motion at 14].

On November 14, 2025, the Court heard argument from the parties on the Motion. At the hearing, the parties agreed to proceed with the Bond Eligible Class only consistent with their briefing on the redundancy of the Adelanto Class. [*See also* Opp. at 24; Reply at 4 n.1]. With the scope of the Motion limited to the Bond Eligible Class only, the Court now considers whether class certification is proper.

## II. LEGAL STANDARD

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." *Wang v. Chinese Daily News*, 737 F.3d 538, 542 (9th Cir. 2013).

In determining whether to certify a class, a district court "take[s] the substantive allegations of the complaint as true," however, "the court also is required to consider the nature and range of proof necessary to establish those allegations." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982).

### A. Rule 23(a) Prerequisites

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). A party seeking class certification must demonstrate the following prerequisites under Rule 23(a): "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (citing Fed.R.Civ.P. 23(a)). The party may not rest on mere allegations, but must provide facts to satisfy these requirements. *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir.1977).

The district court must conduct a "rigorous analysis" and conclude that all four requirements—commonly shorthanded as numerosity, commonality, typicality, and adequate representation—are satisfied. *Wang*, 737 F.3d at 542–43 (quoting *Wal-Mart*, 564 U.S. at 349).

### B. Rule 23(b)(2) Requirements

"In addition to the requirements of Rule 23(a), a proposed class must also meet the requirements of one or more of the 'three different types of classes' set forth in Rule 23(b)." *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 927 (9th Cir. 2019). Here, Petitioners seek certification under Rule 23(b)(2). [Motion at 36–39].

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

## III. DISCUSSION

As a threshold matter, Respondents oppose class certification, arguing that statutory limits preclude the requested method of relief. [Opp. at 14–15]. Respondents further challenge the propriety of class certification by arguing that

Petitioners cannot demonstrate commonality and typicality, and that the proposed classes do not qualify for Rule 23(b)(2) relief.  [Opp. at 15–24].[1]

### A.     8 U.S.C. § 1252

Respondents suggest 8 U.S.C. § 1252(e)(1)(B) precludes class certification in this action.  [Opp. at 14].  Section 1252(e)(1)(B) limits judicial review by preventing courts from "certify[ing] a class under Rule 23 . . . in any action for which judicial review is authorized under a subsequent paragraph of this subsection."  § 1252(e)(1)(B).  Respondents are correct that § 1252(e)(3)(A) limits "[j]udicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia," and limits challenges to the constitutionality of a section or regulation, or whether certain regulations, policies, or procedures are inconsistent with the INA or violates other laws.  [Opp. at 14–15].  *See* § 1252(e)(3)(A).  However, invoking § 1252(e)(1)(B) as a bar to relief is illusory.

Respondents' argument assumes that Petitioners "challenge an alleged new policy that all [noncitizens][2] who entered the United States without inspection are

---

[1] The Opposition further contends that the Adelanto Class is redundant and should not be certified.  [Opp. at 24].  Petitioners concede this argument, and maintain that a nationwide Bond Eligible Class suffices.  [Reply at 4 n.1].

[2] This Order uses the term "noncitizen" in place of "alien."  The Court follows the U.S. Supreme Court and Ninth Circuit, where the use of the term "noncitizen" has become a common practice.  *See Patel v. Garland*, 596 U.S. 328 (2022) (Barrett, J.); *United States v. Palomar-Santiago*, 593 U.S. 321 (2021) (Sotomayor, J.); *Barton v. Barr*, 590 U.S. 222, 226 n.2, (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" (citing 8 U.S.C. § 1101(a)(3))); *Avilez v. Garland*, 69 F.4th 525 (9th Cir. 2023); *Arce v. United States*, 899 F.3d 796 (9th Cir. 2018).  Additionally, this Court thinks it is prudent to "avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing." *Chicago Manual of Style Online* 5.253, https://www.chicagomanualofstyle.org/book/ed17/part2/ch05/psec253.html.  As noted by the Ninth Circuit, "[t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed[.]'" *Avilez*, 69 F.4th at 527 n.1 (citing *Alien*, *Webster's Third New International Dictionary* 53 (2002)).  Accordingly, because the word "noncitizen" is synonymous and does not encompass such negative connotations, the Court finds "noncitizen" is a better word choice.  *See Alien* and

subject to mandatory detention under § 1225(b)(2)(A)." [Opp. at 14]. However, as discussed in the Order on the Motion for Partial Summary Judgment, Petitioners have maintained their position that they are detained under § 1226 and are therefore entitled to receive bond hearings rather than remain in mandatory detention. [Reply at 6].

Because the premise of Petitioners' claim is that the proper governing authority over their detention is § 1226 rather than § 1225, the Court does not find § 1252(e)(3)(A) prohibits this Court from ruling on this Motion.

### B.     Rule 23(a)

The Court now considers whether the proposed class meets the requirements of Rule 23(a).

#### 1.     Numerosity

Numerosity is satisfied if "the class is so large that joinder of all members is impracticable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). Generally, courts find the numerosity requirement satisfied "when a class includes at least 40 members." *Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010)).

Respondents do not dispute that Petitioners have satisfied numerosity. [*See generally* Opp.]. The Court finds numerosity is satisfied given the factual circumstances surrounding the putative class members and geographic scope of the proposed class. [Motion at 28 (suggesting that "at a minimum there are thousands of Bond Eligible Class members")].

The Bond Eligible Class includes individuals that were detained following "Operation At Large," which entailed a 3,000 daily arrest quota of putative class members in Los Angeles, California. [Motion at 27]. Where the Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE") continue to increase immigration-related arrests in cities across the country, the Court finds that Petitioners have demonstrated by a preponderance of evidence that numerosity is satisfied. [*See* Department of Homeland Security, *ICE Launches Operation Midway Blitz in Honor of Katie Abraham to Target Criminal Illegal [Noncitizens] Terrorizing Americans in Sanctuary Illinois* (Sept. 8, 2025)

---

*Noncitizen*, *American Heritage Dictionary of English Language* 44, 1198 (5th ed. 2011).

(documenting "Operation Midway Blitz" in Chicago, Illinois); Department of Homeland Security, *DHS Launches Operation Charlotte's Web to Target Criminal Illegal [Noncitizens] Terrorizing Americans in Charlotte, North Carolina* (Nov. 15, 2025) (indicating "surging resources for Operation Charlotte's Web in North Carolina")].

Based on data from the Executive Office of Immigration Review ("EOIR") and DHS's reports of its operations, the Court finds the Bond Eligible class satisfies the numerosity requirement. [*See* Motion at 26–28].

### 2. Commonality

The second Rule 23(a) requirement is commonality. This prong requires "a plaintiff . . . show that 'there are questions of law or fact common to the class.'" *Dukes*, 564 U.S. at 349 (quoting Fed. R. Civ. Proc. 23(a)(2)). The proposed class's claims must "depend upon a common contention." *Id.* And the common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Accordingly, "what matters to class certification ... is not the raising of common questions—even in droves—but rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* at 350.

Commonality is "construed permissively." *Hanlon*, 150 F.3d at 1019. Thus, "[a]ll questions of fact and law need not be common to satisfy the rule." *Id.*; *see also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) ("Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists").

Rather, the "standard is "readily met" when plaintiffs seek prospective relief "challeng[ing] a system-wide practice or policy that affects all of the putative class members." *Mansor*, 345 F.R.D. at 204. Indeed, the Ninth Circuit has held that "in a civil-rights suit . . . commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Gonzalez*, 975 F.3d at 808 (citations omitted).

There is little question here that Petitioners seek declaratory relief to challenge a newly adopted DHS policy that affects all putative class members. [Motion at 28–32]. Nevertheless, Respondents argue the proposed class lacks

commonality because there are "obvious differences between purported class members," which would require "different answers depending on individualized circumstances." [Opp. at 16].

However, the Court does not find the difference among putative class members so obvious. Although it is possible that individuals may have differing charges of inadmissibility when they are arrested, the deprivation of their right to a bond hearing is a common injury. Such common injury can be resolved in a single stroke upon the determination that the new DHS policy is in violation of their due process rights. *See Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) (describing commonality as "look[ing] only for some shared legal issue or a common core of facts").

The Court's MSJ Order rejected Respondents' proposed interpretation of the INA, which subjected Petitioners and those similarly situated to mandatory detention. [MSJ Order at 1017]. As a matter of law, Respondents' interpretation runs counter to the plain language of the INA, foundational principles of statutory interpretation, and the INA's statutory scheme. [*Id.*]. In other words, the interpretive consequences of Respondents' interpretation and corresponding agency practices stemming from that interpretation injure Petitioners and putative class members in a common manner.

Where the class definition outlines an adequate basis to define this kind of injury, the Court finds commonality has been satisfied.

### 3. Typicality

The third requirement of Rule 23(a) is typicality. "The claims of the representative party must be typical of the class claims." *Gonzalez*, 975 F.3d at 809 (citing Fed. R. Civ. P. 23(a)(3)). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *Schwartz v. Harp,* 108 F.R.D. 279, 282 (C.D.Cal.1985). Typicality looks to "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief

sought." *Hanon*, 976 F.2d at 508. Typicality is a "permissive standard," *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003), but class certification is inappropriate "if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Hanon*, 976 F.2d at 508.

Together, commonality and typicality "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical" and whether the class representative's and class claims are "so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)

Respondents contest typicality by suggesting that "half of [the named Petitioners] will be subject to mandatory detention if and when they apply for immigration benefits." [Opp. at 18]. But Petitioners and the putative class members face essentially identical factual circumstances that satisfy typicality.

Petitioners arrived in the United States without inspection. [Dkt. No. 1 at 6–7]. They were later arrested and detained at an ICE Processing Center and were denied bond hearings by an IJ, who claimed a lack of jurisdiction. [*See id.*; Dkt. No. 5]. At the time of their arrest, Petitioners were charged inadmissible under grounds that did not place them under mandatory detention as required by § 1225(b)(1), § 1226(c), or § 1231. [Dkt. No. 1 ¶¶ 43, 48, 53, 58]. Despite this, Petitioners remained in detention until the Court granted their TRO. [*See* Dkt. No. 5; Dkt. No. 14, "Prior Order"]. After the TRO, Petitioners were granted individualized bond hearings.

A named plaintiff is not typical if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024). Respondents posit that Petitioners cannot show typicality because "if and when [named Petitioners] apply for a U-visa and cancellation of removal, respectively, they will . . . be subject to mandatory detention under § 1225(b)(2)." [Opp. at 18]. Not only does the record fail to support the premise that Petitioners will take such a course of action, but the Court also has doubts as to whether such action would necessitate mandatory detention. [*See* Reply at 7].

Much like the Petitioners, putative class members are noncitizens who already arrived in the United States without inspection, or will enter the United States and not face inspection. [Motion at 14]. In other words, putative class

members are inadmissible, but not subject to mandatory detention under § 1225(b)(1), § 1226(c), or § 1231. Where those individuals are subject to mandatory detention due to Respondents' improper interpretation of the INA, Petitioners' claims present the same circumstances as those of the Bond Eligible Class. Therefore, Petitioners' claims can be considered typical of Bond Eligible Class's.

The Court thus finds that Petitioners have satisfied the typicality requirement for the Bond Eligible Class.

### 4. Adequacy

The final requirement of Rule 23(a) is adequacy. Adequacy looks at whether "the representative parties will fairly and adequately protect the interests of the class." *See Hanlon*, 150 F.3d at 1020 (quoting Fed. R. Civ. P. 23(a)(4)). To evaluate adequacy, the Court looks to whether (1) the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether named plaintiffs and their counsel prosecute the action vigorously on behalf of the class" *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). The named plaintiffs and their counsel must have "sufficient 'zeal and competence' to protect the interests of the rest of the class." *Doe v. Wolf*, 424 F. Supp. 3d 1028, 1043 (S.D. Cal. 2020) (quoting *Fendler v. Westgate-Cal. Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975)).

Respondents do not appear to contest adequacy. Nevertheless, the Court evaluates whether there are any conflicts of interest or concerns associated with named Petitioners and their counsel.

### i. Named Petitioner's Adequacy

The Court turns first to the adequacy of the named Plaintiff Petitioner: Lazaro Maldonado Bautista.

Bautista has lived in Los Angeles, California since 2021 and has no criminal history. [Dkt. No. 41-14 ¶¶ 3, 6, "Declaration of Lazaro Maldonado Bautista"]. He was arrested on June 6, 2025 during an ICE operation in Los Angeles, California. [Dkt. No. 1 at 5–6]. Following his arrest, ICE detained Bautista at Adelanto ICE Processing Facility. [Declaration of Lazaro Maldonado Bautista ¶ 7]. Upon requesting a bond hearing before an immigration court, Bautista attended a hearing at which an IJ concluded that he was subject to mandatory detention and that the IJ lacked jurisdiction to consider his request for release on bond. [*Id.* ¶ 9].

Bautista, along with the other named Petitioners, received a bond hearing only after this Court granted their Application for a TRO.  [*Id.* ¶ 12; *see also* Dkt. No. 5].

Having now been released on bond, Bautista expresses his interest in representing the class and his understanding of the responsibilities of doing so.  In a declaration submitted to the Court, Bautista explains he "want[s] to be a named plaintiff in this case." [Declaration of Lazaro Maldonado Bautista at ¶ 13]. Furthermore, Bautista indicates his understanding that he "would represent a large number of people who have entered the United States without inspection" and "ICE is not considering [those people] for bond." [*Id.*].  The declaration further states he understands he "would represent people who are currently in detention and who have been denied consideration for bond for the same reason as [himself]." [*Id.* ¶ 14].  As part of his role as class representative, Bautista declares that his role would require representing "the interests of all class members in this lawsuit and that it is [his] responsibility to represent the interests of each class as a whole and not just [his] own personal interests." [*Id.* ¶ 15].

Based on his declaration, Bautista asserts that he is an adequate representative of the class; he seeks for the putative class members the same relief he received, and, as of the filing of the complaint, shares the same interests as absent class members. *See Doe v. Wolf*, 424 F. Supp. 3d 1028, 1043-44 (S.D. Cal. 2020).  Nothing in the record suggests that Bautista has any conflicts of interest. Bautista has a "mutual goal" with the other class members to challenge the allegedly unlawful practices and to "obtain declaratory . . . relief that would not only cure this illegality but remedy the injury suffered by all current and future class members." [Motion at 35 (quoting *Nightingale v. U.S. Citizenship & Immigr. Servs.*, 333 F.R.D. 449, 462 (N.D. Cal. 2019))].

The Court finds he is an adequate representative of the Bond Eligible Class.

### ii.    Class Counsel's Adequacy

Counsel for the proposed class have shown that they have experience litigating class actions on immigration matters.  The two attorneys from the USC Gould School of Law Immigration Clinic—Mr. Niels W. Frenzen and Ms. Jean E. Reisz—have litigated and presented arguments in immigration cases in numerous federal district courts and represented clients in approximately fifty petitions before two Circuit Courts of Appeals.  [Dkt. 41-21 ¶¶ 2–4].  Moreover, the attorneys from the Northwest Immigrant Rights Project (NWIRP) have a decade or

more of experience working in immigration law. [*See* Dkt. No. 44-19 (explaining that Adams has many years of experience); *id.* ¶ 5 (explaining that Madrid has worked for NWIRP since 2013); *id.* ¶ 6 (explaining that Kang has worked for NWIRP since 2014); *id.* ¶ 7 (explaining that Korthius has worked for NWIRP since 2018). Notably, Mr. Matt Adams has litigated "hundreds of cases and personally argued on behalf of immigrants before immigration judges, the Board of Immigration Appeals, federal district courts, the Ninth Circuit Court of Appeals, and the United States Supreme Court." [Dkt. No. 41-19 ¶ 3]. He has "successfully moved for class certification and been approved by federal courts as class counsel in sixteen different class actions on behalf of immigrants." [*Id.*].

The Motion further mentions the qualification of counsel from the American Civil Liberties Union, given their deep knowledge of immigration law and experience litigating class actions and complex federal cases. [Motion at 35–36]/ The combined experience of class counsel is more than adequate.

Finally, the Court finds nothing in the record to suggest that the attorneys have any conflicts of interest with other class members. Accordingly, the Court concludes that counsel meet Rule 23(a)(4)'s adequacy requirement.

### C.     Rule 23(b)(2)

Because the proposed class has met the requirements of Rule 23(a), the Court now turns to Rule 23(b). Petitioners seek class certification under Rule 23(b)(2), "which permits the Court to certify a class if 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Jane Doe 1 v. Nielsen*, 357 F. Supp. 3d 972, 991 (N.D. Cal. 2018).

The Ninth Circuit has previously concluded that "[n]either [Rule 23] nor due process necessarily requires that the district court rule on class certification before granting or denying a motion for summary judgment." <u>Wright v. Schock</u>, 742 F.2d 541, 545 (9th Cir. 1984). *See also* <u>Estakhrian v. Obenstine</u>, 859 F. App'x 121, 122 (9th Cir. 2021). As a preliminary matter, the Court's MSJ Order already determined that Respondents' interpretation of the INA cannot be squared with the statutory text and statutory scheme, and articulated the proper interpretation of the INA that applies to Petitioners. [*See* MSJ Order]. The MSJ Order, therefore, makes clear that this proposed class is appropriate for certification under Rule 23(b)(2). However, because the MSJ Order precedes this ruling on the class

certification motion, the Court addresses Respondents' concerns regarding certification and further articulates why Rule 23(b)(2)'s standards are met.

"Class certification under Rule 23(b)(2)" requires that "the primary relief sought is declaratory or injunctive." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). Petitioners "seek declaratory relief and vacatur for [the Bond Eligible Class]." [Motion at 38]. Respondents raise two arguments to oppose class certification: (1) that § 1252(f)(1) prohibits the requested classwide relief, and (2) that the requested relief will not address the Bond Eligible Class's injuries as a whole. [Opp. at 19–23].

### 1. Section 1252(f)'s Prohibition of Class Actions

The Ninth Circuit's recent decision in *Al Otro Lado v. Executive Office for Immigration Review* addresses Respondents' first argument. *See Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 120 F.4th 606, 625–26 (9th Cir. 2024). In this case, the Ninth Circuit rejected the Government's argument that classwide declaratory relief was prohibited by § 1252(f). 120 F.4th at 1123–24. Nevertheless, Respondents insist that the requested declaratory relief would interfere with the Government's efforts to detain noncitizens under § 1225(b)(2), and that is "impermissibly coercive." [Opp. at 20–21]. However, the Supreme Court has acknowledged that a declaratory judgment, "[t]hough it may be persuasive, . . . is not ultimately coercive." *Steffel v. Thompson*, 415 U.S. 452, 471 (1974).

The Court further notes that the statutory text further supports the availability of classwide declaratory relief. *Compare* § 1252(e)(1)(A) (prohibiting courts from entering "declaratory, injunctive, or other equitable relief" in any action to exclude under § 1225(b)(1) *with* § 1252(f)(1) (specifically noting that this subsection is a "[l]imit on injunctive relief"). Therefore, the requested relief for the Bond Eligible Class authorized by Rule 23(b)(2) is not incompatible with § 1252(f).

### 2. Whether Classwide Relief is Appropriate

Respondents next argue that classwide declaratory relief is not appropriate, as "the relief sought would not be uniform and applicable to all class members." [Opp. at 22]. Respondents suggest the class definition "draw[s] no clear distinctions between [noncitizens] entering without inspection and [noncitizens] present without inspection such that no single declaratory judgment would cover all putative class members." [*Id.* at 22–23]. In other words, Respondents take

issue with an overbroad class definition, and further argue that due process may call for dissimilar procedural protections. [*Id.*].

The Court recognizes that Respondents could not benefit from the Court's reasoning in the MSJ Order at the time of submitting their Opposition. However, the MSJ Order has now clarified two important concerns in this matter: (1) that Respondents' interpretation of the INA is incorrect; and (2) the relief requested by Petitioners would merely make available to Petitioners and putative class members the statutory protections imbued by the INA. [MSJ Order at 11, 16]. The accessibility of the INA's statutory protections to noncitizens is therefore uniform.

Rule 23(b)(2) "does not require [courts] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010); *see also Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014). This inquiry "does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries.". *Parsons*, 754 F.3d at 688. Thus, "'it is sufficient' to meet the requirements of Rule 23(b)(2) that 'class members complain of a pattern or practice that is generally applicable to the class as a whole.'" *Rodriguez*, 591 at 1125 (citations omitted).

Consistent with the MSJ Order, Petitioners indeed clarify that the requested declaratory relief is generally applicable to all members of the Bond Eligible Class. According to Petitioners, the new DHS policy applies to the members of the proposed Bond Eligible Class. Where the DHS policy renders all of the Bond Eligible Class subject to mandatory detention under § 1225(b)(2), the putative class members have been deprived of their right to a bond hearing under § 1226(a). [Motion at 37–38]. The declaratory relief requested—a ruling that the policy violates Petitioners' and putative class members' statutory and constitutional rights—would provide the entire class with relief from continued deprivation of their rights. [*Id.* at 13, 38]. Petitioners explain that "[a] single declaratory judgment requiring [IJs] to provide individualized custody determinations at bond hearings" would apply to the class as a whole." [*Id.* at 38].

Crucially, a classwide order declaring the DHS policy in violation of the class members' rights would not ensure their release on bond; it merely secures a

right to an individualized hearing.  Any differences that may exist in class members' entitlement to be released is a different matter than their entitlement to a hearing.  Respondents' concerns regarding uniform relief does not speak to the latter.

"The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the [defendant's] conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360.  The MSJ Order has already found Respondents' interpretation of the INA to be contrary to the statutory text and statutory scheme, and mutually exclusive of Petitioners' interpretation.  Because the proper interpretation of the INA preserves a noncitizen's right to an individualized bond hearing after arrest, the MSJ Order illustrates the indivisible nature of the relief.  The Court finds similar cases from this judicial district instructive.

In *Franco-Gonzales v. Napolitano*, the Court found a class action under Rule 23(b)(2) was maintainable where the plaintiffs claimed that the defendants "[had] failed, on a systemic basis, to have adequate procedures in place to both identify mentally incompetent [noncitizens] and provide them with necessary safeguards." *Franco-Gonzales*, No. CV 10-02211 DMG DTBX, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011).  Petitioners present very similar circumstances here.  Respondents have failed, on a systemic basis, to provide Petitioners and putative class members with the necessary safeguards imbued by the INA in violation of their rights.

Moreover, in *Inland Empire-Immigrant Youth Collective v. Nielsen*, the Court found class certification under Rule 23(b)(2) was appropriate because "to certify a class that is *not* nationwide in scope might result in the application of unlawful practices based solely on geographic location, a piecemeal situation that would lead to arbitrary results." *Inland Empire-Immigrant Youth Collective v. Nielsen*, No. EDCV172048PSGSHKX, 2018 WL 1061408 at *12 (C.D. Cal. Feb. 26, 2018).  With this in mind, the Court finds a nationwide Bond Eligible Class is appropriate.

Accordingly, Petitioners satisfy Rule 23(b)(2).  When considering this determination with the MSJ Order, the Court extends the same declaratory relief granted to Petitioners to the Bond Eligible Class as a whole.

## IV.    CONCLUSION

For these reasons, Petitioners' Motion for Class Certification is **GRANTED** as to the Bond Eligible Class and **DENIED** as to the Adelanto Class. [Dkt. No. 41]. The Court **ORDERS** that the following class be certified:

The Bond Eligible Class is **CERTIFIED** as to Petitioners' claims that the DHS Policy violates the INA and Due Process. The class certified is defined as follows:

- **Bond Eligible Class:** All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

The Court appoints Lazaro Maldonado Bautista as the representative for the Bond Eligible Class. The Court appoints attorneys Niels W. Frenzen and Jean E. Reisz of the USC Gould School of Law Immigration Clinic and Matt Adams, Glenda M. Aldana Madrid, Leila Kang, and Aaron Korthuis of the Northwest Immigrant Rights Project as class counsel.

The Court **SETS** a status conference for **January 16, 2026**, and **ORDERS** parties to submit a Joint Status Report on **January 9, 2026**, which shall include how the parties will proceed with this matter.

**IT IS SO ORDERED**.