UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:25-cv-01873-SSS-BFM | Date | February 25, 2026 |
|---|---|---|---|
| Title | *Lazaro Maldonado Bautista et al v. Ernesto Santacruz Jr et al.* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER DENYING DEFENDANT RESPONDENTS' EX PARTE APPLICATION TO STAY [DKT. NO. 119]**

Defendant Respondents ("Respondents") bring an ex parte Application to Stay. [Dkt. No. 119, "Application" or "App."]. The two orders Respondents seek to stay are the Court's Consolidated Order on Partial Final Judgment and Class Certification and the Court's Order Granting Plaintiff Petitioners' Motion to Enforce (collectively, "the Orders"). Plaintiff Petitioners ("Petitioners") oppose the Application. [Dkt. No. 120, "Opposition" or "Opp."].

## I.    BACKGROUND

The Court briefly reiterates the procedural posture of this case.

Petitioners filed a Petition for Writ of Habeas Corpus and Ex Parte Application for Temporary Restraining Order ("TRO") on July 23, 2025. [Dkt. Nos. 1, 5]. Respondents opposed the TRO. [Dkt. No. 8]. On July 28, 2025, the Court granted a TRO, finding Respondents unlawfully subjected Petitioners to mandatory detention without a bond hearing. [Dkt. No. 14].

    That same day, Petitioners filed a First Amended Complaint, adding various class claims. [Dkt. No. 15]. In August 2025, Petitioners moved to certify an APA class as well as for partial summary judgment. [Dkt. Nos. 42, 43]. Respondents opposed both motions. [Dkt. Nos. 59, 60]. The Court granted Petitioners' motions in November 2025. [Dkt. Nos. 81, 82]. In its Amended Consolidated Order issued on December 18, 2025, the Court entered final judgment as to Counts I, II, and III. [Dkt. Nos. 93, 94].

    Respondents filed a Notice of Appeal to the Ninth Circuit that same day, but did not file a Motion to Stay this Court's orders. Now, over two months after entry of final judgment, Respondents seek a stay of the Orders.

## II.   DISCUSSION

    To justify a stay, Respondents must show a (1) likelihood to succeed on the merits; (2) likelihood of suffering irreparable harm in the absence of relief; and (3) that a stay is in the public interest. *See Humane Soc. of U.S. v. Gutierrez*, 558 F.3d 896, 896 (9th Cir. 2009). Respondents fail to do so.

    **No Likelihood of Success on the Merits:** The Application mostly attempts to relitigate this matter. [*See generally* App. at 7–11 (arguing against class certification, vacatur as a form of relief, the Court's exercise of jurisdiction, and the Court's ability to amend the final judgment or vacate a BIA decision)].[1] At *every* stage of this case, Petitioners, not Respondents, succeeded on the merits. Respondents presented largely identical arguments in response to Petitioners' temporary restraining order, motion for summary judgment, motion for class certification, and post-final judgment request for relief. By virtue of Respondents' repeated failure to present meritorious arguments, it is unlikely that Respondents can satisfy this element. [*See also* Opp. at 9–10 (cataloguing the 380 district judges across federal district courts that have ruled against Respondents)].

---

[1] The Court has already addressed Respondents' arguments. [*See* Dkt. No. 93 at 35–50 (explaining grounds for class certification); *id.* at 20–34 (outlining availability of vacatur); *id.* at 5–10 (addressing justiciability concerns pertaining to the INA), *id.* at 20–35 (addressing justiciability concerns pertaining to the APA); Dkt. No. 112 at 12–15 (discussing the scope of relief under § 2201)]. *See also* Wright & Miller, *Federal Practice & Procedure* § 2771 (4th ed.) (observing that § 2201 "is broad enough to permit the court to grant additional relief long after the declaratory judgment has been entered, provided that the party seeking relief is not barred by laches").

Moreover, the law of the case doctrine supports Respondents' inability to meet this element  See *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (generally precluding a court from "reconsidering an issue previously decided by the same court where the issue in question was decided explicitly or by necessary implication").

**No Irreparable Harm**: Despite insisting on its existence, Respondents fail to articulate irreparable harm for two crucial reasons.  *First,* Respondents face little prejudice or harm because the Orders merely restored the status quo that had been the state of immigration affairs for thirty years.  [Opp. at 8–9, 19–21].  Although Respondents cite to *Maryland v. King* to frame "irreparable injury" in the form of "roadblocks for the Government when it attempts to operate section 1225 as Congress requires," [App. at 12 (citing *Maryland v. King*, 567 U.S. 1301, 1301 (1202)], the Court once again clarifies that Bond Eligible Class members *fall outside § 1225*'s *ambit* because they are not "applicants for admission."  [*See* Dkt. No. 93].  It is instead Respondents that wage irreparable injury against the operation of § 1226, a statutory provision enacted by Congress.

*Second*, Respondents waited *two months* after the Court's entry of final judgment to seek a stay of the Consolidated Order.  The very nature of irreparable harm would necessitate urgent action.  With Respondents' choice to wait 64 days to seek a stay, the Court is unconvinced that there is any injury at stake.

**Contrary to Public Interest**: Finally, staying the Orders does not serve the public interest.  On a structural level, granting a stay would jeopardize separation of powers.

Respondents posit the Orders "directly interfere[] with the immigration court's management of its docket and intrudes on the Executive's authority over immigration detention."  [App. at 12].  The Court disagrees.

Here, the Executive has interfered with the Legislature's constitutional authority to create immigration detention schemes and the Judiciary's province to interpret law.  *See* U.S. CONST'N art. 1, § 8, cl. 3; *id.* § 9, cl. 1; *see Marbury v. Madison*, 5 U.S. 137, 177 (1803).

The Supreme Court previously differentiated the *mandatory* detention regime that Congress set out in § 1225 from the *discretionary* detention regime Congress outlined in § 1226.  *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Congress enacted both § 1225 and § 1226; neither has been repealed.

Ignoring the discussion in *Jennings*, Respondents believe they may reinterpret and nullify § 1226(a), even though Congress enacted it within its constitutional authority. Though obvious, it appears necessary to state that Respondents cannot do so.

"The Constitution did not subject [Congress's legislative powers] to presidential or military supervision or control." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 588 (1952). As Justice Gorsuch recently observed, "it can be tempting to bypass Congress when some pressing problem arises." *Learning Res., Inc. v. Trump*, No. 24–1287, 2026 WL 477534 at *35 (U.S. Feb. 20, 2026) (Gorsuch, J., concurring). Executive temptation to bypass the legislature does not render subsequent executive conduct constitutional.

In particular, Respondents cannot bypass Congress's statutes by means of judicial interpretation. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 399 (2024) (recognizing the APA's command that "'the reviewing court'—not the agency whose action it reviews—is to 'decide *all* relevant questions of law' and 'interpret . . . statutory provisions.'") (emphasis in original). When the Court reviewed and found Respondents' interpretation incorrect, Respondents continued to privilege an executive agency's interpretation of law over a federal court's. This cannot continue without severely jeopardizing separation of powers.

More practically, consider Respondents' suggestion that "class members will not suffer irreparable harm if the Court's Orders . . . are stayed." [App. at 13]. As a preliminary matter, Respondents continued adhering to an incorrect interpretation of law, albeit in a different form, to keep noncitizens in mandatory detention. The Court vacated that other form: *Yajure Hurtado*. With nothing left to justify their actions, Respondents seek this stay.

Respondents point to the availability of habeas relief. [*Id.*]. True, class members may file a habeas petition in the appropriate federal district court. But the precursor to filing habeas relief entails unlawful mandatory detention.

Here is what Respondents—ICE, DHS, and EOIR—have done prior to the Court's most recent Order Granting Petitioners' Motion to Enforce:

- On July 8, 2025, DHS and DOJ together issue the DHS Interim Policy. The Policy legally interprets the Immigration and Nationality Act ("INA") to justify the arrest and indefinite, mandatory detention of noncitizens;

- DHS and ICE arrest and detain noncitizens and subject them to mandatory detention;
- Immigration judges under the EOIR ("IJs") deny bond hearings for lack of jurisdiction due to the Policy;
- The Board of Immigration Appeals ("BIA") issues *Yajure Hurtado*, endorsing the same interpretation embodied in the Policy;
- IJs continue to deny bond hearings, now citing *Yajure Hurtado*; and
- IJs only grant bond hearings only after a district court issues a TRO.

Respondents arrested noncitizens and kept them in mandatory detention, *even when it was found to be against the law*. Respondents forced noncitizens to wait for a temporary restraining order before freeing them from unlawful detention. Crucially, the only noncitizens released from detention are those that pose ***no flight risk or no danger to safety*** as required by regulation. Respondents had no justification to keep these noncitizens in mandatory detention in the first place.

Granting a stay would allow Respondents to reinstate this exact sequence of events. That cannot possibly serve the public interest.

## III. CONCLUSION

Respondents continue to repeat that Congress forbids courts from entering classwide injunctive relief. Their repetition serves no purpose. The Court never ordered classwide injunctive relief. It vacated the unlawful DHS Interim Policy and declared the correct interpretation of the INA. In doing so, the Court made clear that Respondents' interpretation of the law was wrong. Then, in order to enforce these prior orders, the Court vacated *Yajure Hurtado*.

It is not beyond belief to this Court that Respondents may continue to place noncitizens in mandatory detention, thereby continuing to violate this Court's lawful orders, until there is classwide injunctive relief. Of course, the only judicial body that can do so pursuant to § 1252(f)(1) is the Supreme Court. Perhaps that is what is necessary. But that issue is not before the Court.

For the reasons discussed above, the Court **DENIES** Respondents' Application. [Dkt. No. 119]

**IT IS SO ORDERED.**